**UNITED STATES of America**

**v.**

**Milton L. HAYWARD, Appellant.**

**No. 22749.**

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 17, 1969.

Decided Nov. 18, 1969.

· Mr. Mozart G. Ratner, Washington, D. C. (appointed by this court) for appellant.

Mr. Julius A. Johnson, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and Roger E. Zuckerman, Asst. U. S. Atty., were on the brief, for appellee. Mr. John A. Terry, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, and TAMM and ROBINSON, Circuit Judges.

TAMM, Circuit Judge:

On November 18, 1968, appellant was convicted of first degree murder (22 D.C.Code § 2401 (1967)) and carrying a dangerous weapon (22 D.C.Code § 3204 (1967)), for which he was sentenced to life imprisonment and one year, respectively. As part of his defense, appellant proffered an alibi which alleged that he was at home with his mother, sister and sister-in-law at the time the murder took place. Conflicting testimony placed him at the scene of the crime at the time the fatal shot was fired, and the jury was properly left with the responsibility of determining the validity of the alibi defense.

█ In instructing the jury on the alibi defense and the manner in which it should be treated, the trial judge gave the following proper instruction:

If, after a full and fair consideration of all the facts and circumstances in evidence, you find that the Government has failed to prove beyond a reasonable doubt that the Defendant was present at the time when and at the place where the offense charged was allegedly committed, you must find the Defendant not guilty.

(Tr. 763.) This much of the instruction was proper and is in accord with Instruction No. 116 (Alibi), Jr. Bar Section of D.C. Bar Ass'n, Criminal Jury Instructions for the District of Columbia (1966). In an honest effort to further clarify the proper approach which the jury should take to the alibi defense, however, the trial judge added the following paragraph to the instruction:

On the other hand, if, after a fair and full consideration of all the facts and circumstances in evidence, you find that the Government has proved beyond a reasonable doubt that the Defendant was present at the time when and at the place where the offense

charged was committed, *then you must find the Defendant guilty.*
(Tr. 763; emphasis added.) Although we are confident that the use of the word "must" in this instruction was an honest oversight on the part of the trial judge, it was error to so instruct the jury and we are compelled to reverse the conviction and order a new trial.

■ Implicit in the right to trial by jury afforded criminal defendants under the sixth amendment to the Constitution of the United States is the right to have that jury decide all relevant issues of fact and to weigh the credibility of witnesses. By instructing the jurors that they *must* find the defendant guilty if they determined that the evidence placed him at the scene of the crime, the court took from the jury an essential element of its function.

> [T]he judge cannot decide that upon the evidence the accused is guilty and direct a verdict accordingly; a finding of guilt is for the jury alone. Only when there is upon the evidence no doubt that the verdict must be not guilty can the judge "take the case from the jury"; only then can he direct a verdict.

Cooper v. United States, 94 U.S.App.D.C. 343, 345, 218 F.2d 39, 41 (1954); *see also* United Brotherhood of Carpenters v. United States, 330 U.S. 395, 408, 67 S.Ct. 775, 91 L.Ed. 973 (1947); Compton v. United States, 377 F.2d 408, 411 (8th Cir. 1967); Mims v. United States, 375 F.2d 135, 148 (5th Cir. 1967).

■■ The rule that a directed verdict of guilty is invalid is enforced no matter how conclusive the evidence in the case may be.[1] While the judge in this case did not direct a verdict of guilty in form,

that is the substantive effect of the instruction given. The rule against directed verdicts of guilt includes perforce situations in which the judge's instructions fall short of directing a guilty verdict but which nevertheless have the effect of so doing by eliminating other relevant considerations if the jury finds one fact to be true. As the Supreme Court said in Bollenbach v. United States, 326 U.S. 607, 614, 66 S.Ct. 402, 406, 90 L.Ed. 350 (1946), "the question is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury according to the procedure and standards appropriate for criminal trials in the federal courts." *See also* Schwachter v. United States, 237 F.2d 640, 644 (6th Cir. 1956); United States v. Gollin, 166 F.2d 123, 127 (3d Cir.), cert. denied, 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151 (1948); Carothers v. United States, 161 F.2d 718, 722 (5th Cir. 1947).

■ Appellee urges that the erroneous instruction was cured by other instructions given by the trial judge along with the challenged instruction. Citing Howard v. United States, 128 U.S.App.D.C. 336, 340, 389 F.2d 287, 291 (1967), the government says that an incorrect portion of a trial court's instruction can be cured by a consideration of the entire jury charge. Such is the case only as to harmless error which may be held not to require reversal under the statutory provision because it does not affect the "substantial rights" of the parties.[2] While the *Howard* case states that an appellate court "need not reverse" when the error is corrected by a consideration of the charge as a whole, it cannot be seriously argued that such error is harmless when it goes to so fundamental a right as the right to trial by jury. The Supreme

---

1. "Despite the strong evidence of guilt, we cannot hold that this erroneous charge was harmless. No matter how conclusive the evidence, a court may not direct a verdict of guilt. While this charge did not direct the jury to find the defendant guilty, it did take from the jury the question of [his] guilt." Edwards v. United States, 286 F.2d 681, 683 (5th Cir. 1960).

2. "On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties." 28 U.S.C. § 2111 (1964).

Court has said of the technical-error rule laid down in the statute:

> All law is technical if viewed solely from concern for punishing crime without heeding the mode by which it is accomplished. The "technical errors" against which Congress protected jury verdicts are of the kind which led some judges to trivialize law by giving all legal prescriptions equal potency. * * * Deviations from formal correctness do not touch the substance of the standards by which guilt is determined in our courts, and it is these that Congress rendered harmless. * * * *From presuming too often all errors to be "prejudicial," the judicial pendulum need not swing to presuming all errors to be "harmless" if only the appellate court is left without doubt that one who claims its corrective process is, after all, guilty.* In view of the place of importance that trial by jury has in our Bill of Rights, it is not to be supposed that Congress intended to substitute the belief of appellate judges in the guilt of an accused, however justifiably engendered by the dead record, for ascertainment of guilt by a jury under appropriate judicial guidance, however cumbersome that process may be.

*Bollenbach* at 614–15, 66 S.Ct. at 406 (emphasis added).[3]

■■ When the error which is challenged on appeal goes to a basic constitutional right, such as the right to trial by jury in issue here, the error will rarely be considered harmless. The Supreme Court has pointed out that "there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967); *see also Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). The Court therefore held that, while there are some constitutional errors which

could be so unimportant and insignificant that they could be deemed harmless, before such a federal constitutional error will in fact be held harmless, "the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.* at 24, 87 S.Ct. at 828. Because we cannot say that the error in this proceeding was harmless beyond a reasonable doubt, we must reverse the trial court.

While it is true that there was a substantial amount of evidence pointing to the guilt of the defendant, and while there were other instructions relating to the other elements to be taken into consideration by the jury, it is not possible for us to say that this erroneous instruction did not affect the jury in its determination of the defendant's guilt. Clearly the trial judge instructed the jury that if it rejected the defendant's alibi defense then it must find him guilty. Such is not the law, and we cannot say that this is not the point upon which the jury determined the defendant's guilt. The rule in situations such as this is quite clear:

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitution norm. * * * *But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected.* The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

---

3. The Court was referring in this case to 28 U.S.C. § 391 (1946), the predecessor of the current harmless error statute. That section was substantially the same as the current section 2111 of Title 28.

Kotteakos v. United States, 328 U.S. 750, 764–65, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946) (emphasis added). We cannot say that the result in the present case was not "substantially swayed" by the error committed by the trial judge; the conviction must therefore be reversed.

 The highly inflammatory and prejudicial nature of some of the tactics used by the prosecution cannot go unmentioned.[4] It is fundamental to sound procedure in federal criminal prosecutions that counsel refrain from "appeal wholly irrelevant to any facts or issues in the case, the purpose and effect of which could only [be] to arouse passion and prejudice." Viereck v. United States, 318 U.S. 236, 247, 63 S.Ct. 561, 566, 87 L.Ed. 734 (1943); see also United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 240, 60 S.Ct. 811, 84 L.Ed. 1129 (1940); Brown v. United States, 125 U.S.App. D.C. 220, 224, 370 F.2d 242, 246 (1966). This is particularly true in situations in which the statements are designed to imply actions on the part of the defendant about which no competent evidence has been admitted. Johnson v. United States, 121 U.S.App.D.C. 19, 21, 347 F.2d 803, 805 (1965). In this case the prosecution made frequent reference to the paucity of prosecution witnesses, and repeatedly implied that the reason so few witnesses were forthcoming was because of intimidation on the part of appellant and his family.[5]

In response to questions from the bench regarding evidence of possible intimidation, the prosecutor freely admitted that "[t]here is no indication that [appellant] personally did anything." (Tr. 392.) After considering this response overnight, the judge called counsel to the bench the following morning and the following dialogue ensued:

[THE COURT]: I have considered the matter overnight and am convinced that this type of an inquiry would be highly prejudicial to the defendant, and while it might lay the basis for a contempt charge against the defendant or people acting on his behalf, or a charge of obstructing justice, those are separate offenses and cannot be introduced at this time.

[PROSECUTION]: If Your Honor feels that that would give rise to a strong inference of that in front of the jury, I couldn't say and *I am not representing to the Court that any witnesses have so far said that they were threatened by Milton Hayward or any of his friends.*

The witnesses who testified for the Government—just about all of them live in that neighborhood. * * * *They lived there before the crime. They live there now, and they are going to continue to live there so far as we know, at least in the immediate future.*

You have seen the defendant. You have seen his family. *You can imagine —or may you not conclude, based on the testimony, based on what you have seen in this case, based on what you have heard, that it would be difficult for those witnesses who saw the defendant commit this crime, come down and in open court, in open court in front of this defendant and in fron [sic] of his brothers, testify as to those facts. It would be difficult for them to do that because they still have to live in that neighborhood.*

(Tr. 718–719; emphasis added.)

---

4. The Assistant United States Attorney who represented the government on this appeal is not the prosecutor whose trial tactics are questioned in this opinion.

5. In his rebuttal closing statement, the prosecutor made the following statements: Consider this, Ladies and Gentlemen of the jury, too, when you evaluate witnesses. * * * The police told you they interviewed between forty and fifty people. * * * They tried to find all these witnesses.

We have given you what we have. Think of this when you evaluate the testimony of these witnesses. This is a neighborhood crime. *Mr. Thomas lived in that neighborhood and so did the defendant and so did his family.*

You have seen all his family. You have seen the witnesses who testified. *You saw his two brothers, Joe Louis Hayward and Ronald Hayward, sitting in the Courtroom.*

(Tr. 397–98; emphasis added.) In light of this warning from the bench and the fact that no evidence of any impropriety on the part of any person was ever proffered, it is difficult to understand why counsel felt compelled to make the intimations which he made in his rebuttal. His explanation of this action was made in response to defense counsel's motion for a mistrial at the end of the closing arguments:

[DEFENSE]: * * * [T]here was an inference drawn that certain people wouldn't want to testify because of fear of reprisal. In fact, it was mentioned that the two brothers were sitting in the Courtroom, and that they were out there.

This was in a neighborhood. Certainly, I don't see where that has any place in this trial. There is no evidence of intimidation or anything before this jury, and the fact that the defendant had two brothers sitting in the Courtroom at some state of this trial certainly has no relevance to the issues in this case.

[PROSECUTION]: I would like to respond to that.

* * * I have a right to explain in my rebuttal, and it was rebuttal. I didn't do it in the opening part of my argument, but in my rebuttal, to respond to that argument [that the government had not made a strong case because it had relatively few witnesses].

* * * * * *

I think I have a right from in those circumstances—and again, I only did it in rebuttal, and not in my opening argument—to respond to that argument, that is, to explain in trying to justify the credibility of the witnesses, to say as I did, "Can you imagine these people coming down and lying about somebody when he didn't do it?" and how difficult it may have been in that kind of close-knit community, to come down and tell the truth.

(Tr. 722–24.)

While it may be acceptable for the prosecution to make remarks in rebuttal which imply coercion under circumstances in which the jury has before it evidence of intimidation or coercion, a proposition about which we make no decision at this time, such intimations are not proper when there is not a scintilla of evidence to substantiate the implication. The Supreme Court has clarified the function of the prosecution in federal criminal cases in the following terms:

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935).

Our attention is focused on this flagrant and reprehensible appeal to the passions of the jury which prejudiced the appellant's right to a fair trial because the case is going back to the trial court as noted above; were it not for the otherwise erroneous conduct of the trial for which we reverse, this action on the part of the prosecution might have placed the judgment in jeopardy. Such action is "offensive to the dignity and good order with which all proceedings in court should be conducted." *Viereck* 318 U.S. at 248, 63 S.Ct. at 566.

For the reasons set forth above, the judgment of the District Court is

Reversed.