**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Reno VARANI, Defendant-Appellant.**

**No. 20228.**

United States Court of Appeals,
Sixth Circuit.

Dec. 4, 1970.

James E. Wells, Detroit, Mich., for appellant.

Ralph B. Guy, Chief Asst. U. S. Atty., Detroit, Mich., James H. Brickley, U. S. Atty., Detroit, Mich., on the brief for appellee.

Before PHILLIPS, Chief Judge, and EDWARDS and BROOKS, Circuit Judges.

EDWARDS, Circuit Judge.

Appellant was named in an indictment wherein the Grand Jury charged:

"That on or about January 10, 1969, in the Eastern District of Michigan, Southern Division, Reno P. Varani, defendant herein, did by threats of force, endeavor to intimidate and impede Samuel M. Ginsberg, [sic] an officer of the Internal Revenue Service, Department of the Treasury, while

the said Samuel M. Ginsberg [sic] was acting in an official capacity under Title 26, United States Code; in violation of Section 7112(a) [7212(a)], Title 26, United States Code."

After a stormy trial before a District Judge and jury in the United States District Court for the Eastern District of Michigan, he was found guilty by jury verdict and sentenced to one year of imprisonment, which sentence was subsequently suspended in favor of two years' probation.

On appeal appellant contends that the letter principally relied upon by the government at trial did not constitute "force or threats of force" within the meaning of the statute; that the appellant was denied a right to his chosen counsel, and, hence, forced to represent himself to his prejudice, and that reversible error occurred during the course of the trial as a result of prejudicial conduct on the part of the trial judge and prejudicial argument by the United States Attorney who tried the case.

Appellant also contends that 26 U.S.C. § 7212(a) (1964), as interpreted by the District Judge in his instructions to the jury, is unconstitutional.

This case has a lengthy record, but on careful examination of same it appears to afford only one arguable appellate issue, which we have stated last in the list above.

Indignant taxpayers are by no means novel in the federal appellate courts, but Mr. Varani's indignation about his tax problems appears to exceed that of any taxpayer in the recent history of this court. The merits of Varani's tax problems, of course, were not before the District Court and are not now before us.

In 1965 appellant filed a blank income tax return. Thereupon Mr. Samuel Ginsburg, a collection officer for the Internal Revenue Service, was assigned to contact appellant to secure a delinquent 1965 income tax return. This apparently was accomplished in January 1967, but the record indicates that appellant filed a similar blank return in 1966 and that Ginsburg was again assigned to contact him. Ginsburg's testimony about his next contact with appellant is as follows:

"Q Will you tell us what transpired during that telephone conversation in December of 1967?

"A Well, on December 18, 1967, I called Mr. Varani and I asked him once again whether he would file his 1966 income tax return with me. And he said—he stated he will not file another return for the year 1966. Then he proceeded to give me a lecture on Americanism and then he made this final statement: If I try to seize his property—I'm quoting: 'I'm an expert rifleman and I'll blow your head off.'"

Ginsburg meantime had received a taxpayer delinquent account pertaining to appellant for income taxes due for 1963, and after some difficulty, arranged to meet appellant at a bowling alley on January 7, 1969. Pertaining to this meeting, which occurred in the presence of four or five other persons, Ginsburg testified as follows:

"A I told him my mission is only to discuss the payment of the assessment.

"Q Were any gestures made of any sort during that meeting?

"A Yes, sir.

"Q What would that be, sir?

"A He made a fist and he stuck it up right in front of my nose. I'd say about a half inch or inch from it.

"Q Was there any mention made of—

"A Pardon? I didn't hear you.

"Q Was any mention made of weapons of any sort?

"A Oh, yes, sir. He said, 'I'm an expert rifleman and I'm going to get you.'"

Thereafter on the next day appellant wrote Ginsburg a letter which was intro-

duced as Government's Exhibit 23, and which recited as follows:

"R. P. Varani
19110 Nadol
Southfield, Michigan
January 8, 1969

"Infernal Revenue Service
16480 Woodward Avenue
Highland Park, Michigan 48203

Attention: Samuel M. Ginsburg
Revenue Officer International Agent
NEA—GR. No. 6
Refer—Form L–25

"To Whom It May Concern:

"Your perverted and repeated attempts to exort alleged tax liabilities simply proves that you have lost your self-respect and are subjecting American citizens to the treachery and tyranny of communist masters. Yesterday, January 7, 1969, you and your three cohorts showed your true colors. Your inordinate fear of a tape recorder and flat refusal to allow our conversation to be recorded is ample evidence of your inability to face up to the truth.

"My answer to your notice of January 7, 1969, to seize my property or rights to property, including salary, wages, commissions, bank accounts or receivables is NUTS!!!

"*Let me quickly say in plain english—any force used to seize my property will be met with a superior force.* I have more respect and prefer fighting an honest enemy, such as the Nazis I fought in W.W. II, than treacherous parasites of the I.R.S.

"During W.W. II I was an infantryman with the illustrious 104th. Timberwolf Division, an expert rifleman, who took battalion honors in competitive shooting. Yet, I never killed a Nazi. One time I had a German soldier in my sights, took dead aim, took up the slack of my trigger, held my breath and began squeezing the trigger and stopped just in time to save the taking of a life needlessly. You see this poor soldier was not threatening my life or the life of any of my bud-

dies. He was running in the opposite direction as fast as his legs could carry him.

"*I have lost all respect for the I.R.S. and consider you a treacherous enemy worst than the Nazi's. I have an itchy trigger finger more deadly than when I was over-seas.* By the Grace of God I am in excellent physical shape and I want to fight you so bad—I can taste it! However, I am a Christian and therefore in good conscience I cannot resort of deceit or treachery. It is only a matter of time —I hope—when more of my fellow Americans will join me and we will make quick work of the sniveling traitors and cowards who under false pretenses are perverting the U. S. Constitution.

"The U. S. Constitution is the supreme law of the land and guarantees maximum liberty with a minimum of restraint. It is the finest blue print for government ever conceived by the mind of man. It is worth fighting for and worth dying for.

"*Now for your own well being I must insist that you write me a letter before January 15, 1969. You must declare that you, Samuel M. Ginsburg, will not become personally involved, alone or with others in an effort to seize my property. In the event you fail to write such a declaration and members of the I.R.S. attempt to seize my property, I will hold you, Samuel M. Ginsberg, personally responsible.* I will swear out a warrant for your arrest and charge you with violating Sections, 243, 371, 1001, 2381, 2382, 2384 and 2385, Title 18, United States Criminal Code, and the Constitution of the United States of America, and Michigan State Statute 28–410. I will then hunt you down and use what ever force necessary to handcuff you and haul you off to jail in accordance with Sections 764.15, 764.16, 764.17, 764.20, 764.21, 764.22, 764.23 and 764.24 of Code of Criminal Procedure (Ch. 4) Statutes of State of Michigan, a copy

of which is enclosed. (Emphasis added.) [1]

"For God and Country,
"/s/ R. P. Varani
"Encl.
RPV/ds"

Enclosed with this letter were the Code sections of the Michigan Statutes dealing with a citizen arrest referred to in the last paragraph of the letter. Subsequent to receipt of this letter Varani was indicted. Pertaining to one of the trial days, Ginsburg testified:

"Q Did Mr. Varani have any conversation with you this morning, sir?

"A Yes, sir, he did.

"Q Who initiated that conversation?

"A Mr. Varani did.

"Q Where were you seated at that time, sir?

"A I was seated in the last row on the side.

"Q Where was Mr. Varani at that point?

"A Mr. Varani was in front of me and he pointed a finger at me.

"Q Did you have any conversation or did Mr. Varani say anything about the letter which has been received as Government Exhibit 23, sir?

"A Yes, sir.

"Q What did he say, Mr. Ginsburg?

"A He said, 'That is not a threat; it's a promise; what I'm going to do to you.' "

Appellant does not dispute that he wrote and mailed the letter quoted above. In addition, there is much confirming evidence to support Ginsburg's testimony concerning oral threats just before and just after the letter was written. It is appellant's contention, however, that the letter was speech protected by the First Amendment and that the admission of testimony of threats before and after receipt of the letter was reversible error.

We believe that the evidence we have quoted (along with similar evidence pertaining to appellant's oral threats against Ginsburg and other IRS personnel) was admissible as bearing upon the intent of the sender. United States v. Kirkpatrick, 361 F.2d 866 (6th Cir. 1966); Grant v. United States, 255 F.2d 341 (6th Cir.), cert. denied, 358 U.S. 828, 78 S.Ct. 48, 3 L.Ed.2d 68 (1958); Nees v. Culbertson, 406 F.2d 621 (5th Cir.), cert. denied 395 U.S. 959, 89 S.Ct. 2098, 23 L.Ed.2d 745 (1969).

The statute under which appellant was indicted and convicted provided:

"Attempts to interfere with administration of internal revenue laws

"(a) Corrupt or forcible interference.—Whoever corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly or by force or threats of force (including any threatening letter or communication) obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title, shall, upon conviction thereof, be fined not more than $5,000, or imprisoned not more than 3 years, or both, except that if the offense is committed only by threats of force, the person convicted thereof shall be fined not more than $3,000, or imprisoned not more than 1 year, or both. The term 'threats of force,' as used in this subsection, means threats of bodily harm to the officer or employee of the United States or to a member of his family." 26 U.S.C. § 7212(a) (1964).

We do not deal here with a statute which imposes criminal liability upon an act regardless of motive. *See* Holdridge v. United States, 282 F.2d 302 (8th Cir. 1960). The word "endeavors" necessarily implies intent. The criminal intent in-

---

[1]. The portions of this letter which we have emphasized are those which the jury could have considered to represent threats of force, despite other language of an exculpatory nature.

volved in this statute is that of intentionally employing a threat of force in order to obstruct or impede an IRS employee in the lawful discharge of his duties. On review of a jury verdict of "guilty," we review the evidence from the point of view most favorable to the government. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). So read, we believe this jury found that appellant had endeavored to obstruct or impede Agent Ginsburg's proper discharge of his duties by threatening to kill him if he did.

Appellant, however, contends:

"Not a scrap of evidence in this case was offered by the government to show actual use of force or even the likelihood that Defendant would in fact use force on Mr. Ginsburg."

 Appellant's constitutional argument is that absent proof of a "clear and present danger" (See Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 63 L.Ed. 470 (1919)) appellant's conduct is protected by the First Amendment. As we see the matter, the "substantive evil," Schenck v. United States, supra at 52, 39 S.Ct. 247, which Congress sought to prevent in Section 7212(a) was not the evil of assault upon or murder of an IRS agent, but the impeding or obstructing of such an agent's performance of duty by threats of such assaults. We believe a statute serving this purpose is well within the constitutional powers of Congress. Contrary to the apparent logic of appellant's contention, speech is not protected by the First Amendment when it is the very vehicle of the crime itself. E. g., 18 U.S.C. § 1621 (1964) (Perjury); 18 U.S.C. §§ 201–224 (1964), as amended, (Supp V, 1969) (Bribery); 18 U.S.C. §§ 871–877 (1964), as amended, (Supp. V, 1969) (Extortion and Threats); 18 U.S.C. §§ 371–372 (1964) (Conspiracy).

As to the trial itself, acquaintance with this almost unbelieveable record

leads us to characterize all of appellant's other stated issues as frivolous. This record does not show denial of counsel. On the contrary, the District Judge all but implored appellant to employ the competent counsel which he had readily available and on his refusal and insistence on trying the case himself, the District Judge assigned counsel to advise him all through the trial.[2] And the accusation of prejudicial conduct of the trial by the District Judge is even farther from the mark. In our view the District Judge exhibited remarkable tolerance of appellant's repeated obstreperous conduct and far more patience than is called for by the highest standards of due process.

The judgment of the District Court is affirmed.

---

2. We note, of course, (and find no error in the District Judge's rulings on) appellant's expression of desire to be represented by out of state counsel, who demonstrated astounding and unexplainable reluctance to seek admission to the bar of the United States District Court in charge of this case.