UNITED STATES of America

v.

James E. JOHNSON.

No. 71–1845.

United States Court of Appeals,
Third Circuit.

Argued March 20, 1972.

Decided June 1, 1972.

James E. Johnson, pro se.

Frederick W. Klepp, Asst. U. S. Atty., Trenton, N. J., for appellee.

Before ADAMS, GIBBONS * and RO-SEN, Circuit Judges.

## OPINION OF THE COURT

JAMES ROSEN, Circuit Judge.

The convictions which form the basis of this appeal arise from a micro-melo-drama occurring at Grady's Incorporat-ed, on Route 9 in Bayville, New Jersey, on April 18, 1969. On that day, several officers of the Internal Revenue Service went to Grady's, Inc. to remove property located on the premises, which had been

---

* Although Judge Gibbons was a member of the panel before which this case was in-itially listed for disposition, he recused himself in this matter.

seized[1] on April 14, 1969 for non-payment of quarterly corporate taxes. The seizures were made after a corporate officer of Grady's, Mr. Toughill, had supplied revenue officers with an inventory and equipment list showing all property owned by Grady's, and after a search had been made of the County Clerk's records to determine whether any prior liens had been effected against the property.

Appellant encountered the IRS officers in his office where they had gone for a key to open the Grady premises. The officers identified themselves to Johnson and explained the nature of their visit. Appellant stated that the seized property belonged to him by virtue of a landlord's lien, and that the officers would not be permitted to enter the premises of Grady's, Inc. A locksmith was summoned, and the officers returned to Grady's. Johnson summoned two local police officers from Berkeley Township, insisting that the IRS officers be arrested. The police officers refused to act unless a formal complaint was lodged. Johnson then placed himself in the door and stated that he would bar the IRS officers entrance into the building, and that they

would only enter over his dead body.[2] The officers again advised appellant of their identity and purpose, but Johnson remained steadfastly in the doorway. He was then placed under arrest and the officers requested that he submit peacefully. Johnson refused to submit, and the agents attempted to physically remove him from his position in the doorway. A scuffle ensued, and one of the agents was scratched and bitten. Eventually the appellant was subdued and handcuffed, and the officers gained entrance to the premises.

A three count indictment was returned under 18 U.S.C. § 111[3] and 26 U.S.C. § 7212(a).[4] Count 1 charged a willful assault of federal officers; count 2 charged Johnson with willfully resisting, opposing, impeding and interfering with federal officers; and count 3 charged appellant with endeavoring, by threats of force, to impede IRS officers in the exercise of their duties and in their official capacities. Johnson entered a plea of not guilty. His jury trial resulted in an acquittal on count 1 and a conviction on the remaining counts. Throughout the trial appellant represented himself without the assistance of an attorney. On May 7, 1971

---

1. A seizure is effected by posting warning stickers in the windows of the premises and on each item seized. In this case, a notice of seizure was also delivered to Mrs. Toughill, an officer of Grady's Inc., at Mr. Johnson's office.

2. Trans. 38, 1. 12–15.

3. § 111. Assaulting, resisting, or impeding certain officers or employees

   Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

   Whoever, in the commission of any such acts uses a deadly or dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

4. § 7212. Attempts to interfere with administration of internal revenue laws—

   (a) Corrupt or forcible interference.— Whoever corruptly or by force or threats of force (including any threatening letter or communication) endeavors to intimidate or impede any officer or employee of the United States acting in an official capacity under this title, or in any other way corruptly or by force or threats of force (including any threatening letter or communication) obstructs or impedes, or endeavors to obstruct or impede, the due administration of this title, shall, upon conviction thereof, be fined not more than $5,000, or imprisoned not more than 3 years, or both, except that if the offense is committed only by threats of force, the person convicted thereof shall be fined not more than $3,000, or imprisoned not more than 1 year, or both. The term "threats of force", as used in this subsection, means threats of bodily harm to the officer or employee of the United States or to a member of his family.

the trial judge committed Johnson to the custody of the Attorney General for study and observation for a period of three months, pursuant to 18 U.S.C. § 4208(b). Final sentence was imposed on July 26, 1971. The appellant was fined $2500. and placed on probation for two years on count 2 and was fined $2500. and placed on a one year probation on count 3.

The appellant advances several grounds of error: (1) the court's charge was "duplicitous", resulting in inconsistent verdicts; (2) the verdict of acquittal on count 1 required an acquittal on the remaining counts, so that the verdicts as returned are "fatally" inconsistent; (3) isolated remarks made by the trial judge were highly prejudicial; (4) the court's refusal to allow evidence to be introduced on the question of Johnson's ownership of the seized property was plain error; and (5) the multiple fines on counts 2 and 3 of the indictment and a 90 day pre-sentencing incarceration of the defendant constitute an illegal sentence.

We view appellant's first and second contentions of error in terms of "multiplicity." His argument reduces itself to a claim that the separate counts of the indictment arise out of the same act, and charge offenses which are in fact one and the same. As far as this court can determine, Johnson takes exception to the judge's charge insofar as separate offenses are delineated along the same lines as the separate counts of the indictment, i.e. (1) assault, (2) wilful and forcible resistance and (3) wilful impediment to IRS officers, by threats of force, contrary to Title 26. Since Johnson regards these counts as multiplicitous statements of the same offense, he claims that the charge also suffers from the same error, thus leading the jury to arrive at inconsistent verdicts.[5]

■ In the absence of congressional intent to the contrary, the applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine if there are two offenses or only one is whether each provision requires proof of a fact which the other does not. Blockburger v. United States, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L.Ed. 306 (1932). The test prescribed in *Blockburger,* though criticized by some as being too broad,[6] has been followed in this jurisdiction and in others. United States v. Stubin, 446 F. 2d 457 (3d Cir. 1971); Goldsmith v. Cheney, 447 F.2d 624 (10th Cir. 1971); Downey v. Peyton, 451 F.2d 236 (4th Cir. 1971).

The court's charge to the jury separated each of the chargeable offenses under 18 U.S.C. § 111:

"An assault under our law is defined as an attempt or an offer with unlawful force or violence to do bodily injury or physical injury to another. *. * * It is an offer or attempt to do bodily harm. To impede, as used in the statute, someone in the performance of their duties means, to obstruct them, to get in their way while they are attempting to carry out their duties. To intimidate someone means

---

5. Recognizing that the test to be applied is whether "each provision requires proof of additional facts of evidence", appellant maintains that there can be "no serious argument that all the essential facts required to maintain a prima facie case on Counts 2 and 3 of Indictment 284–69 were encompassed by the proofs presented in establishing the assault on the IRS officers charged in the First Count" and that "the defendant's act of blocking entrance into the building with his body, removing his coat and tie, and his offer to physically bar any IRS agent's for-

ward movement, all goes toward the proofs of the essential elements of assault, resisting, impeding or interfering, without any added facts." Appellant's brief, p. 7.

6. One commentator has criticized the test for obscuring analysis of the underlying nature of offense categories. 8 Moore's Federal Practice-Cipes, Criminal Rules (2d Ed.), § 8.07 [2], p. 8–56. See also, Note, Multiple Punishments, 50 Minn. L. Rev. 1102 (1966).

to bully or browbeat them; in this case, so as to prevent them from doing what they were sent to the Grady, Inc. to do."

The court enumerated the various elements of the Government's burden of proof in this fashion:

"First, the act or acts of forcibly assaulting, resisting, opposing, impeding or intimidating an Internal Revenue Officer while that Officer was engaged in the performance of his official duties. * * * And second, that these acts were done willfully, intentionally, on purpose, not by accident. And third, that the defendant knew the agents were agents engaged in the performance of their official duties."

The court also included the following instruction in its charge to the jury with respect to the third count of the indictment:

"The third count in the indictment charges that the defendant tried to interfere with the Internal Revenue Agents involved in this case by threats of force and thereby interfere with the administration of the Internal Revenue laws by these agents and that the defendant did this by attempting to prevent the agents from removing certain properties from Grady, Incorporated in Bayville, New Jersey. Again, I refer you to the testimony, that Mr. Johnson removed his coat, removed his tie and removed his glasses and put his body in the doorway. You will have to decide why he did that. Did he intend to interfere as charged or did he not? If that is proved beyond a reasonable doubt, such conduct would be a violation of the Section 7212 of which he is charged with."

We first dispose of appellant's minor points of error. Johnson's statement of the law that proof of scienter is not required to sustain a conviction under 18 U.S.C. § 111 is correct. Specific knowledge of the victim's status as a federal officer is not an essential element of the crime. United States v. Goodwin, 440 F.2d 1152 (3d Cir. 1971). Neither is it necessary to prove knowledge on the part of a defendant that the agent was officially engaged. United States v. Langone, 445 F.2d 636 (1st Cir. 1971), cert. denied, 404 U.S. 915, 92 S.Ct. 226, 30 L.Ed.2d 189, (1971). He argues that since the court included the element of scienter in its charge, he was deprived of his right to have a fair and correct statement of the law and that this somehow prejudiced the jury's deliberations against him. We find no basis for this claim of prejudice. The judge's charge merely placed an additional burden of proof upon the Government, a burden which it was not required to sustain under the statute. Johnson next claims that the judge's refusal to allow the admission of evidence tending to show that he was the true owner of the property seized was clearly erroneous. We disagree. Such evidence cannot be used as a defense to the charges presented to the jury. United States v. Scolnick, 392 F.2d 320, 326, (3d Cir. 1968), cert. denied sub nom. Brooks v. United States, 392 U.S. 931, 88 S.Ct. 2283, 20 L.Ed.2d 1389 (1968). Similar claims have been made in cases where forcible resistance to execution of search warrants has been defended on the basis that such warrants were illegally or invalidly executed. This court has ruled that a person does not have the right to forcibly resist execution of a search warrant by a peace officer or a Government agent, even though that warrant may subsequently be held to be invalid. United States v. Ferrone, 438 F.2d 381 (3d Cir. 1971), cert. denied 402 U.S. 1008, 91 S.Ct. 2188, 29 L.Ed.2d 430 (1971). The purpose of this section is to provide federal officers the protection of federal courts when such officers are performing their duties. See United States v. Langone, *supra.* This purpose is not achieved where individuals are at liberty to resist federal officers in the performance of their duties because of a difference of opinion, whether real or imagined, regarding either the scope or

the methods used to carry out those duties.[7]

Johnson contends that evidence was introduced by the Government tending to prove a battery which was not only surplusage but was unrelated to any specific charge in the indictment. He claims that the judge's charge and comments on the evidence misled the jury to inferring that "it could return a conviction based on a theory of criminal responsibility other than that charged in the indictment." We find no merit to this argument. Cf. United States v. Linn, 438 F.2d 456, 459, (10th Cir. 1971).

This brings us to appellant's major contention, namely, that the separate counts of the indictment in fact charge one and the same offense and constitute multiplicitous charges. We limit our consideration of this claim to the second and third counts of the indictment inasmuch as Johnson has been acquitted of the assault count. Preliminarily, we note that 26 U.S.C. § 7212(a) which prohibits attempts to interfere with the administration of internal revenue laws, was intended to prevent the impeding or obstructing of internal revenue agents' performance of their duties by threats of assault, rather than assaults upon or murder of agents. United States v. Varani, 435 F.2d 758 (6th Cir. 1970). The Government's burden of proof on this count differed in a very fundamental respect from that with which it was charged under the first and second counts: it was necessary for the jury to be convinced that Johnson knew that the men whose entrance he was blocking were internal revenue agents and were acting in their official capacity to seize certain properties located on the Grady premises to satisfy a

tax delinquency. See United States v. Rybicki, 403 F.2d 599 (6th Cir. 1968).

Furthermore, before we may find that 18 U.S.C. § 111 proscribes acts constituting a single offense, we are required to interpret the various disjunctives used in the statute in a conjunctive sense, or else to regard them as excess verbiage. However, it is a general rule of statutory construction that words in statutes should not be construed as excess verbiage. Indeed, one court has applied this rule to determine that the word "forcibly" in section 111 ought to limit the proscribed acts to fewer acts than would fit the definition of the unmodified verbs alone. United States v. Bamberger, 452 F.2d 696 (2d Cir. 1971). We see, therefore, that the type of conduct prohibited by section 111 of Title 18 occupies a much more restricted area than that encompassed by 26 U.S.C. § 7212(a). The latter statute prohibits interference with the performance of a duty by "threats of force." 18 U.S.C. § 111 on the other hand requires an ability to inflict harm, not merely interference with the performance of a duty. Long v. United States, 199 F.2d 717 (4th Cir. 1952). Section 111 is not meant to sweep in all harassment of Government officials. "Nor is it used to penalize frustrating an official, without more, even if that action is deliberate." United States v. Bamberger, *supra*, 452 F.2d p. 699.

18 U.S.C. § 111 proscribes acts and requires elements of proof different from that which are necessary to sustain convictions under 26 U.S.C. § 7212(a). Likewise, the various words used to describe the type of behavior prohibited by Section 111 constitute separate and distinct offenses, so that Johnson was properly chargeable with

---

7. The trial judge correctly charged the jury that under a section of the Internal Revenue Code, appellant Johnson had a civil remedy for the recovery of property, illegally seized by internal revenue officers. Testimony was adduced at trial that Johnson had in fact sought an injunction against the IRS and its officers from re-

moving certain of these properties from the premises of Grady's Incorporated. Because such had not been accomplished at the time the officers attempted the removal, Johnson sought instead to rely on self-help rather than pursue the applicable civil remedies available to him.

both one count of assault under this section as well as the second count charging willful and forcible intimidation and resistance. See United States v. Marcello, 423 F.2d 993, 1012 (5th Cir. 1970), cert. denied 398 U.S. 959, 90 S.Ct. 2172, 26 L.Ed.2d 543 (1970).

■■■■ The appellant finally alleges prejudice because of the portion of the instruction wherein the court stated:

"It is also your sworn duty to find him guilty if the Government has carried its burden of proof and has established his guilt beyond a reasonable doubt. This is necessarily so and vitally important, because the failure on the part of courts and juries to enforce one law leads to the violation of other laws, thus undermining the morals, the peace and order of the nature and the general safety of the lives and property of the people." (Transcripts 239 ll. 11–20).

An appellate court looks at the entire charge in determining whether or not the trial judge properly performs his function. Specific sections of the charge taken out of context are often used to form the basis for arguments alleging prejudicial error. We have looked at the whole cloth of the trial, including the entire charge, and can find no prejudice or error in the court's use of this language. Cf. United States v. DeAlesandro, 361 F.2d 694 (2d Cir. 1966), cert. denied 385 U.S. 842, 87 S.Ct. 94, 17 L.Ed.2d 74 (1966).

We have reviewed the sentences received by Johnson and the relevant statutory provisions under which they were imposed. We find no merit to the claim that the multiple fines on counts two and three and the 90 day pre-sentencing incarceration are illegal.

The convictions will be affirmed.

ADAMS, Circuit Judge (concurring).

I concur in the result reached in this case. In addition, I feel that the pre-sentence commitment procedure utilized by the trial judge merits some comment.

Appellant contends that following the conclusion of his trial the district court ordered that he be committed to the custody of the Attorney General for observation and study, and that pursuant to such order he was removed from the courtroom without an opportunity to notify his family and incarcerated *incommunicado* for a period of approximately ninety days.

Section 4208(b) of Title 18, U.S.C. provides:

"(b) If the court desires more detailed information as a basis for determining the sentence to be imposed, the court may commit the defendant to the custody of the Attorney General, which commitment shall be deemed to be for the maximum sentence of imprisonment prescribed by law, for a study as described in subsection (c) hereof. The results of such study, together with any recommendations which the Director of the Bureau of Prisons believes would be helpful in determining the disposition of the case, shall be furnished to the court within three months unless the court grants time, not to exceed an additional three months, for further study. After receiving such reports and recommendations, the court may in its discretion: (1) Place the prisoner on probation as authorized by section 3651 of this title, or (2) affirm the sentence of imprisonment originally imposed, or reduce the sentence of imprisonment, and commit the offender under any applicable provision of law. The term of the sentence shall run from date of original commitment under this section."

Thus, the trial judge has wide discretion in determining whether the procedure set forth in the statute should be followed. Yet, the general tone of the section, when read in conjunction with section 4208(a), implies that the procedure should not be invoked as a matter of course unless the court has reached the tentative conclusion that "the ends of justice and best interests of the public require that the defendant be sentenced

to imprisonment for a term exceeding one year." The purpose of section 4208 is to vest the court with the flexibility to reduce a sentence, Dolack v. United States, 217 F.Supp. 617 (D. Hawaii, 1963), and not to provide a means of incarceration pending formal sentencing. *See* Iler v. United States, 433 F.2d 8 (9th Cir. 1970); United States v. York, 281 F.Supp. 385 (D.Kan.1968).

Because the commitment deprives a defendant of his liberty, albeit for a commendable purpose, it is important that district judges be circumspect in the exercise of their discretion so as to protect the rights of defendants and not to utilize the provisions of section 4208(b) to impose a greater sentence on a defendant than the nature of the crimes he committed would ordinarily warrant.