**Stanley WATTS, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 7777.**

District of Columbia Court of Appeals.

Argued July 16, 1974.

Decided Nov. 26, 1974.

Richard A. Levie, Washington, D.C., appointed by this court, for appellant. Michael A. Kramer, Alexandria, Va., also appointed by this court, entered an appearance.

Donald E. Robinson, Jr., Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry and James F. McMullin, Asst. U. S. Attys., were on the brief, for appellee.

Before KELLY, FICKLING and HARRIS, Associate Judges.

FICKLING, Associate Judge:

This is an appeal from a jury trial conviction of appellant on one count of first

degree burglary [1] and two counts of assault with a dangerous weapon.[2] The principal issue is whether the trial judge's instruction, which required the jury to find appellant guilty if it concluded that he had committed acts which constituted the offense charged, deprived appellant of his constitutional right of a jury trial. We agree and reverse. In view of our disposition, we need not address the other issues which are raised.

During the early morning hours of December 24, 1972, Miss Bertha Inabinet and Miss Cynthia Celey were asleep in the living room of the apartment which they shared. At approximately 6 a. m., Miss Celey was awakened by a loud noise and observed a figure, whom she later identified as the appellant, standing over Miss Inabinet, holding the remains of a china cat with which he had struck her.[3] Miss Celey began to scream and the appellant, discarding the china cat and seizing an ashtray, struck her. Following that, appellant departed. Miss Celey and appellant had known each other prior to this incident and had, at one time, been quite intimate. Their relationship had ended four or five months prior to December 1972.

At the trial two witnesses testified for the defense and stated that Miss Celey, who had described the above incident in her testimony, did not have a good reputation in the community for truth and veracity. The appellant also testified, denied any involvement in the incident, and interposed an alibi defense. Appellant's cousin and a friend both corroborated that defense.

 Appellant asserts that the trial judge committed error in instructing the jury that if they found beyond a reasonable doubt that appellant had committed acts which constituted the essential elements of the crimes charged, then he *must*

1. D.C.Code 1973, § 22–1801.

2. D.C.Code 1973, § 22–502.

3. Miss Inabinet, who had been wearing Miss Celey's coat when she fell asleep, remained unconscious during the events and did not see her assailant.

be found guilty.[4] The appellant claims that such language is equivalent to the trial judge's directing a verdict of guilty, which violates appellant's Sixth Amendment right to trial by jury.[5] We agree.

The Sixth Amendment provides that a criminal defendant shall have the right to a trial by an impartial jury. From this guarantee derives the principle that a trial judge in a criminal proceeding may not direct a verdict. As Judge Prettyman poignantly stated in Cooper v. United States, 94 U.S.App.D.C. 343, 345, 218 F.2d 39, 41 (1954):

> If upon the evidence there is a question whether the accused is guilty or is innocent, the jury must decide that question; the judge cannot decide such a question. And the judge cannot decide that upon the evidence the accused is guilty and direct a verdict accordingly; a finding of guilt is for the jury alone. . . .

This principle governs a criminal trial regardless of whether the judge attempts to partially direct a verdict [6] or the evidence points conclusively toward guilt.[7]

Further, no particular incantation by a judge is necessary to conclude that the verdict was directed.

The rule against directed verdicts of guilt includes perforce situations in which the judge's instructions fall short of directing a guilty verdict but which nevertheless have the effect of so doing by eliminating other relevant considerations if the jury finds one fact to be true. . . . [8]

The obverse of the principle prohibiting directed verdicts in criminal trials is the recognized prerogative of a jury to disregard the evidence or the judge's instructions. This prerogative is embodied in the jury's power to issue a general verdict of not guilty which is irreversible by the court and which does not reveal the jury's rationale. United States v. Dougherty, 154 U.S.App.D.C. 76, 93, 473 F.2d 1113, 1130 (1972). This is not to say that a jury nullification instruction specifically drawing the jury's attention to the prerogative is mandated; indeed, this court has held that it is not error to refuse such an instruction. Arshack v. United States, D.C.App., 321 A.2d 845, 849–852 (1974). The jury's power to exercise its prerogative is nevertheless intact.

We must keep in mind that a judge's most offhanded remark or inference is considered with the utmost respect by the

---

4. Instruction No. 2 charged the jury that "if you find beyond a reasonable doubt that on December the 24th, 1972, in the District of Columbia, the defendant, Stanley Watts, did enter the sleeping dwelling of Cynthia D. Celey, [that] said dwelling was occupied at the time, and that at the time of the entry the defendant possessed the specific intent to commit an assault upon Cynthia D. Celey, then you *must* find the defendant guilty of burglary in the first degree." (Emphasis added.)

Instructions 5 and 6, which dealt with the charge of assault with a dangerous weapon against both Celey and Inabinet, also charged the jury that if it found, beyond a reasonable doubt, the facts to be as charged, then it "*must* find the defendant guilty." (Emphasis added.)

5. The government, in addition to denying appellant's contention, also asserts that pursuant to Super.Ct.Cr.R. 51 appellant, by failing to object to the instructions when offered

an opportunity to do so, waived his assignment of error. This court recognized in Barnes v. United States, D.C.App., 313 A.2d 106, 110 n. 8 (1973), that "a party seeking appellate review of erroneous jury instructions cannot raise the issue for the first time on appeal unless there is plain error." Since, in the instant case, the jury instruction was equivalent to directing a verdict of guilty and thus denied the appellant his right to trial by jury, we hold that the instruction constituted plain error and is, therefore, properly reviewable in this court.

6. Mims v. United States, 375 F.2d 135, 148 (5th Cir. 1967).

7. United Bhd. of Carpenters & Joiners v. United States, 330 U.S. 395, 408, 67 S.Ct. 775, 91 L.Ed. 973 (1947); accord, Montford v. United States, 271 F.2d 52 (5th Cir. 1959).

8. United States v. Hayward, 136 U.S.App. D.C. 300, 302, 420 F.2d 142, 144 (1969).

jury. "[T]he influence of the trial judge on the jury is necessarily and properly of great weight, and . . . his lightest word or intimation is received with deference, and may prove controlling." Starr v. United States, 153 U.S. 614, 626, 14 S.Ct. 919, 923, 38 L.Ed. 841 (1894). Each word of a jury instruction must be weighed carefully so as to be certain that it does not convey to the jury the impression that it must render a verdict of guilty or that its prerogative is denied.

In the instant case, use of the phrase "must find the defendant guilty" [9] could have been erroneously construed by the jury as denying its prerogative of finding the defendant not guilty, notwithstanding the evidence. The command "took from the jury an essential element of its function." United States v. Hayward, 136 U. S.App.D.C. 300, 302, 420 F.2d 142, 144 (1969). Therefore, it was reversible error to give such instruction.

Reversed with instruction to grant a new trial.

HARRIS, Associate Judge (dissenting):

As I evaluate this case and all truly relevant authorities, the trial court did not err in its instructions to the jury—and assuredly it did not commit plain error.

A few supplemental comments as to the evidence are appropriate. The house which appellant entered unlawfully was shared by Cynthia Celey, Bertha Inabinet, and their respective children. Mrs. Celey had known appellant for about three years, during much of which they had an intimate but stormy relationship. Approximately a year prior to the incident involved in this case, Mrs. Celey went to the Corporation Counsel's office to make a complaint after appellant beat her. Their dating relationship was terminated four or five months prior to the events before us. When they broke up, appellant threatened her, and thenceforth she lived in fear of him. She testified that she had needed protection from him on several occasions, and that it became necessary to have the windows of her home nailed shut. Several weeks prior to the incident before us, appellant cut a hole in a window in Mrs. Celey's home in an effort to gain entrance, but he was observed by Mrs. Inabinet and left.

Mrs. Celey and Mrs. Inabinet had a party at their home on the night of December 23, 1972. At the end of the evening, the children and a female house guest were asleep upstairs. An upstairs hall light was on. In the living room, only the Christmas tree lights were on. Mrs. Celey was sleeping on the couch, while Mrs. Inabinet, unfortunately wearing, Mrs. Celey's coat, slept on a chair.

Mrs. Celey was awakened by a crash. Appellant had gained entry to the home, taken a china cat from the wall, and smashed it over the head of Mrs. Inabinet. (Ten stitches were required to close the wound.) Mrs. Celey screamed at appellant, calling him by name. He looked at her, looked back at the person whom he had assaulted, and looked again at Mrs. Celey. He apparently then realized he had

---

9. Few decisions from other jurisdictions review the precise language challenged here. In Straughter v. State, 247 A.2d 202 (Del. 1968), where the court did review an instruction which employed the "must" phraseology, the court held that the instruction was not erroneous. However, in Billeci v. United States, 87 U.S.App.D.C. 274, 184 F.2d 394 (1950), the challenged instruction was held to be erroneous. There the instruction read:

If you believe from the testimony that the defendants have committed the crime . . . charged, then you *must* find a verdict of guilty, irrespective of whether the witnesses appealed to you or not. . . . [*Id.* at 279, 184 F.2d at 399; emphasis added.]

The court held:

That statement is not the law. The law is that if the jury believes beyond a reasonable doubt that the defendant has committed the alleged offense it *should* find a verdict of guilty, but if there be a reasonable doubt in the minds of the jurors they *must* acquit. The instruction given was error. [*Id.*; emphasis added.]

struck the wrong person. He began an assault on Mrs. Celey, first using the remaining half of the shattered china cat and then striking her with an ashtray. He broke her finger and cut her. Then he fled, evidently because of her screaming and the approach of the house guest from upstairs.

So much for the government's rather overwhelming evidence, which was credited by the jury and which we therefore must accept as true on this appeal. Among his instructions to the jury, the trial judge stated that if the jury found that the government had proven the commission of each offense beyond a reasonable doubt, "then you must find the defendant guilty as charged. If you do not find the facts to be you must acquit the defendant."[1] There was no objection to the giving of such an instruction.[2]

I have no quarrel with the cases cited in the majority opinion; I consider them to have been decided correctly on their particular facts. However, in my view, they lend no support to the majority's result.

Obviously, it is impermissible for a trial judge to direct a verdict of guilty. However, in no sense can it validly be said that the trial court did so in this case. It is axiomatic that "jury instructions are to be considered as a whole, rather than as isolated passages." United States v. Martin, 154 U.S.App.D.C. 359, 363, 475 F.2d 943, 947 (1973). Among the carefully delivered instructions were those explaining the presumption of innocence and the requirement of proving each element of each offense beyond a reasonable doubt. This case does not present the type of situation which necessitated reversals of convictions in Baker v. United States, D.C.App., 324 A.2d 194

(1974), and United States v. Hayward, 136 U.S.App.D.C. 300, 420 F.2d 142 (1969). In each of those cases, the jury effectively was instructed that it could return a verdict of guilty without having to find that the government had proven each element of the offense beyond a reasonable doubt. I share the reasoning of those opinions (and specifically concurred in this court's *Baker* opinion, 324 A.2d at 199), but they provide no true guidance here.

The majority relies heavily upon Billeci v. United States, 87 U.S.App.D.C. 274, 184 F.2d 394 (1950). I find two flaws in such reliance. Initially, the majority implicitly approves an instruction that a jury "should" find a defendant guilty if it finds that it has been proven beyond a reasonable doubt that he committed the offense. For the majority to sanction an instruction that the jury "should find" a defendant guilty if there is proof beyond a reasonable doubt (as it must, since the Circuit Court's pre-court reorganization *Billeci* decision remains controlling authority in this jurisdiction), but to find plain error in the use of the term "must", strikes me as a regrettable example of the extent to which appellate courts occasionally elevate minute semantic differences in jury instructions to the level of decisional significance.

The further flaw in the majority's reliance on *Billeci* is that the case does not stand for what the majority suggests. In *Billeci,* a jury advised the trial judge that it had not been able to reach a verdict. In then making an effort to encourage the jury to reach agreement, the trial judge strayed from the standard of proof of guilt beyond a reasonable doubt. Instead, he stated that the jury should apply the following considerably lesser standard: "If you believe from the testimony that the de-

---

1. The majority repeatedly emphasizes the first usage of the word "must" when it quotes the instruction, although there is no indication in the record that the trial court placed any emphasis on it. To use the same technique, the instruction would read quite differently as follows: "[If you find proof beyond a reasonable doubt] . . . then

you must find the defendant guilty as charged. If you do not find the facts to be you *must* acquit the defendant." (Emphasis added.)

2. The absence of an objection limits our standard of review to plain error, about which more is said *infra*.

fendants have committed the crime of which they are charged, then you must find a verdict of guilty, irrespective of whether the witnesses appealed to you or not." *Id*. 87 U.S.App.D.C. at 279, 184 F.2d at 399. It was that transgression—permitting a finding of guilt on the basis of mere belief rather than proof beyond a reasonable doubt—which the court quite rightly held to be erroneous, rather than the subtle distinction between the words "should" and "must".

The present standardized jury instruction on burden of proof stops far short of reflecting the law as stated in *Billeci* and as implicitly approved by the majority in this case. That instruction provides that the jury "must find" a defendant not guilty if the government fails to prove every element of the offense beyond a reasonable doubt, but gives the jury no guidance whatsoever as to its duty if it finds that each element of the offense has been proven beyond a reasonable doubt. Criminal Jury Instructions for the District of Columbia, No. 2.08 (2d ed. 1972). In earlier days, such an instruction may well have been adequate. But times change, and jurors' recognition of their individual and collective responsibilities change. Careful consideration has led me to conclude that a meaningful degree of instructional equipoise is needed to guide juries in arriving at their verdicts. To be silent as to a juror's duty if guilt is proven beyond a reasonable doubt is to invite acquittals based not on the law and the facts, but on whim, sympathy, or prejudice. A verdict returned on such a basis, while properly not reviewable, scarcely is consistent with the profound obligation undertaken by each juror.

The trial judge in this case and I, of course, are not alone in reaching such a conclusion. It is apparent from the many records which come before us and from cases decided by other appellate courts that more and more judges are concluding that a proper balance in the criminal justice process requires an exposition of both sides

of a juror's basic duty. In each reported case of which I am aware (assuming proper instructions as to the need for finding that a defendant's commission of an offense has been proven beyond a reasonable doubt), appellate courts have affirmed instructions which, in effect, have told the members of a jury that they have as great an obligation to find guilt where guilt has been proven as they do to acquit where it has not. *E. g.,* United States v. Johnson, 462 F.2d 423, 429 (3d Cir. 1972), cert. denied, 410 U.S. 937, 93 S.Ct. 1396, 35 L.Ed. 2d 602 (1973); United States v. Minker, 312 F.2d 632, 636 (3d Cir. 1962), cert. denied, 372 U.S. 953, 83 S.Ct. 952, 9 L.Ed. 2d 978 (1963); Straughter v. State, 247 A.2d 202, 203–204 (Del.1968); State v. Devoe, 301 A.2d 541, 545–546 (Me.1973); State v. Bryant, 375 S.W.2d 107, 108 (Mo.1964). The simple fact is that there is no relevant prior authority which supports the result reached by the majority.

The moment at which jeopardy attaches in a criminal jury trial is the moment the jury is sworn in. In the Superior Court, each juror then solemnly swears that he or she will "a true verdict render according to the law · and the evidence." That oath must be considered to have deep meaning. It tells each juror to be guided not by whim or prejudice, but by the law and the evidence adduced at trial. I see no error —much less plain error—in the trial court's use of "must find" in lieu of the term "should find" which is permissible under Billeci v. United States, *supra*.

Of great significance is the fact that the instructions in question were not objected to at trial. Superior Court Criminal Rule 30 (which is identical to Fed.R.Crim.P. 30) deals with the jury instructions. Among its provisions is the following:

No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

The majority opinion makes no reference to that rule. With no elucidation, the majority simply holds in a footnote that the language in the instructions "was equivalent to directing a verdict of guilty" and hence reached the level of plain error.[3] It is this aspect of the case which is most troubling to me. The reasons for requiring an objection to jury instructions as a prerequisite to appellate review thereof were expressed cogently by the Circuit Court as follows in Villaroman v. United States, 87 U.S.App.D.C. 240, 241–242, 184 F.2d 261, 262–263 (1950):

> The requirement is for the sound and practical purpose of affording the court an opportunity to make any additions or corrections that may be deemed appropriate before the jury retires to consider of its verdict. * * * A failure to make objections to the charge deprives a judge of the final opportunity for consideration and action which may avoid serious error resulting in a futile trial. So, in fairness to the court, the parties, and the administration of justice itself, there should be compliance with the rule. It was not followed in this case. Therefore, we must hold the assignment of error invalid. (Citations omitted.)

Of course, such a rule should not be considered to be absolute. In Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L. Ed.2d 462 (1963), the Supreme Court stated (at 436, 83 S.Ct. at 1386):

> . . . there was no objection to the instruction given. Under these circumstances, petitioner may not now challenge the form of that instruction. * * * Nor was there on this score any such plain error in the charge, affecting substantial rights, as would warrant reversal despite the failure to object. (Citations omitted.)

In Bunter v. United States, D.C.App., 245 A.2d 839 (1968), we agreed with the Second Circuit that appellate courts have the inherent power "to notice errors without objection 'if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings.'" Id. at 842, quoting from United States v. Indiviglio, 352 F.2d 276, 280 (2d Cir. 1965); see United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936). In Bunter, the author of the majority opinion in this case went on to state (245 A.2d at 842):

> Furthermore, this court does not look with approval upon the practice of experienced trial counsel failing to make objections at trial, which may result in error creeping in and opening opportunities for appeal if the verdict is unfavorable. Timely and specific objection is desirable to give the trial judge "an opportunity to correct the error and thus avoid the necessity of further proceedings, possibly including a new trial." United States v. Indiviglio, 352 F.2d 276, 280 (2d Cir. 1965). Therefore, the exercise of our discretion in noticing unobjected-to alleged errors raised for the first time on appeal must and will be limited to cases where a very clear showing of prejudice is made. (Footnote omitted.)

As a general proposition, we have equated plain error with a miscarriage of justice. Adams v. United States, D.C.App., 302 A.2d 232, 234 (1973). Whether we now use the label "very clear showing of prejudice" (as in Bunter, supra) or "miscarriage of justice" is not significant.

3. Super.Ct.Cr.R. 52(b) is identical to Fed. R.Crim.P. 52(b), and provides: "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Fed. R.Crim.P. 54 specifically makes Rule 52(b) applicable to proceedings in the United States Court of Appeals, but the Superior Court rules contain no such counterpart. Nonetheless, where indeed there is plain error concerning instructions, I would agree that it should be considered by us notwithstanding the fact that Super.Ct.Cr.R. 52(b) is not binding upon this court.

What is significant is that the majority is reversing a conviction which was based on overwhelmingly persuasive evidence solely because the trial judge said "must find" rather than "should find". There is no question in my mind but that the distinction between the two terms "is just too minor a flaw to constitute plain error." United States v. Howard, 139 U.S.App.D.C. 347, 352, 433 F.2d 505, 510 (1970). Inevitably the holding in this case will encourage defense attorneys to withhold objections to jury instructions. If an acquittal results, fine; if not, a new trial may be gained on appeal notwithstanding Rule 30. For if the instructions in this case constituted plain error, I find it difficult to visualize any instructional error which might not reach that level. Accordingly, I respectfully dissent.

Nonetheless, I would not merely affirm appellant's conviction. While I do not consider the term "must find" to be plainly erroneous, it does strike me as less than ideal. I would go beyond affirmance, and, in the exercise of our superintendent authority over the Superior Court, specifically sanction the prospective use of the following modification of the latter portion of the present Instruction 2.08: "If you find that the government has proved beyond a reasonable doubt that the defendant committed every element of the offense with which he is charged, it is your sworn duty to find him guilty. On the other hand, if you find that the government has failed to prove any element of the offense beyond a reasonable doubt, you must find the defendant not guilty." Thus, in my view, would the totality of justice best be served.[4]

---

4. In United States v. Johnson, *supra,* the Third Circuit sustained the following specific instruction in the context of the instructions as a whole (462 F.2d at 429):

It is also your sworn duty to find him guilty if the Government has carried its burden of proof and has established his guilt beyond a reasonable doubt. This is necessarily so and vitally important, because the failure on the part of courts and juries to enforce one law leads to the violation of other laws, thus undermining the morals, the peace and order of the nature and the general safety of the lives and property of the people.

As noted, the Supreme Court denied a petition for a writ of certiorari in the *John-son* case.