W. A. COMPTON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 18477.

United States Court of Appeals
Eighth Circuit.

May 23, 1967.

Ivan Williamson, Mountain View, Ark., for appellant.

Lindsey J. Fairley, Asst. U. S. Atty., Little Rock, Ark., for appellee; Robert D. Smith, Jr., U. S. Atty., Little Rock, Ark., was with him on brief.

Before VAN OOSTERHOUT, BLACKMUN and MEHAFFY, Circuit Judges.

MEHAFFY, Circuit Judge.

This is an appeal from the District Court of the United States for the Eastern District of Arkansas, wherein the United States filed its libel of information against one 1964 GMC pickup truck, its tools and appurtenances, for forfeiture alleging violations of 26 U.S.C. §§ 5205(a) (2), 5601(a) (12), 5604(a) (1), 7206(4), 7301 and 7302, which prohibit and provide a penalty, *inter alia,* for the possession of and/or the transportation of untaxed distilled spirits, with certain enumerated exceptions. The libel alleged that the truck was used by W. A. Compton, claimant-appellant, in the unlawful transportation of untaxed whiskey. Compton responded, claiming title to the truck but denying its unlawful use.

After preliminary hearing and denial of motion to suppress the evidence, the case was tried to a jury which returned a verdict against the United States. At the close of the evidence, Compton moved for a directed verdict on the ground of insufficiency of the evidence, which motion the court denied. The Government also moved for a directed verdict; whereupon, the court reserved ruling on this motion. However, after the jury returned a verdict against the Government, the court entered judgment n. o. v. in favor of the Government. It is from this judgment that Compton has appealed.[1] We reverse.

Briefly summarized, the facts disclose that on the day before Compton was apprehended the county sheriff had received information from some boys who stated that they had purchased moonshine whiskey from Compton. This was on a Saturday, and on the following Sunday afternoon the sheriff, in company with a state policeman, went to a rural area near Compton's home in the vicinity of Rushing, Stone County, Arkansas, in a state police car, parking it around a curve on a gravel road, sometimes referred to as the "WPA Road." Shortly thereafter, while they were standing beside the car, Compton rounded the curve in the pickup truck here involved. According to the officers, Compton accelerated his speed upon seeing the police car. The sheriff and the state patrolman jumped into the police car and pursued Compton at a high rate of speed along the winding, hilly, country road, but were unable to stop him until the sheriff punctured his right front tire with a pistol shot, causing the truck to swerve into a ditch by the roadside, where it came to a stop in a tilted position. The chase covered about three miles, and the officers testified that after about one and a half miles they saw Compton throw a glass jug out of the truck. Upon reaching the truck they found fragments of glass from what appeared to have been two one-gallon glass jugs. A liquid was dripping from the cab of the truck. The trooper found a soft drink bottle alongside the road which the officers used to catch some of the liquid drippings. They also scooped up some of the liquid from the floorboard of the truck. After placing Compton under arrest, the officers testified they drove back and found the glass gallon jug which Compton had thrown from the speeding truck.

These officers took Compton to jail and took his truck to the sheriff's home. That night the sheriff called an investigator for the Alcohol and Tobacco Tax Division of the Internal Revenue Service who arrived the following morning and took charge of the truck.

At the trial, the Government introduced as an exhibit the soft drink bottle containing the liquid, and Government witnesses testified that it looked and smelled like whiskey. They also testified that they found no evidence of Government stamps on any of the glass and that the liquid in the gallon jug smelled the same as the liquid in the soft drink bottle. There was no physical evidence available at the trial, however, except the soft drink bottle containing the liquid. The glass gallon jug, the two broken jugs, etc. had been returned to the county sheriff after the hearing on the motion to suppress evidence in order that they could be used in a state charge against Compton, and all the evidentiary material except the soft drink bottle and its contents was mysteriously purloined the night before the scheduled commencement of the state trial. During the presentation of the Government's evidence, the soft drink bottle containing the liquid passed to the jurors for their individual examination of its contents. The trial court, during the course of the examination of the sheriff, expressed its conviction to the jury that the liquid was

---

1. Compton prematurely attempted to appeal from the court order denying his motion to suppress. We have before us that record also and now consider it as consolidated with this appeal. The conclusion we reach precludes the necessity of discussion of the validity of the arrest and search and seizure issues.

whiskey.[2] The testimony presented by the Government consisted solely of the statement of the Sheriff of Stone County, the Arkansas State Trooper who assisted in the arrest, and the investigator for the Alcohol and Tobacco Tax Division of the Internal Revenue Service. The opinions expressed by these officers to the effect that the liquid was "wildcat" or "moonshine" whiskey (meaning by these expressions that it was untaxed and illegal) were based solely on the odor or smell thereof.

Compton's counsel vigorously cross-examined the officers, eliciting statements from them which were contradictory to those which they made at the hearing on suppression. However, these contradictory statements pertained to matters which are collateral to the central issue here and need not be considered. Counsel for claimant-appellant was content to stand on said cross-examination, together with the jury's own examination of the alleged illegal liquor. Therefore, the sole question for consideration here is whether or not, under such facts, the District Court had a right to preempt the jury's verdict. Forfeiture cases such as this are civil in form, but, nonetheless, are in their nature criminal. Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). A forfeiture is clearly a penalty for a criminal offense. One 1958 Plymouth Sedan v. Com. of Pennsylvania, 380 U.S. 693, 700, 85 S.Ct. 1246, 1250, 14 L.Ed.2d 170 (1965).[3] If this were indeed a criminal case, the trial court would not be authorized to direct a verdict of guilty, no matter how conclusive the evidence. Edwards v. United States, 286

F.2d 681 (5th Cir. 1960), citing United Brotherhood of Carpenters, etc. v. United States, 330 U.S. 395, 408, 67 S.Ct. 775, 91 L.Ed. 973, (1947). This court has consistently held, however, that on issues of evidence, such cases should be treated as civil cases, with the Government having the burden of proving the material allegations of the libel by a preponderance of the evidence only, and not being required to prove said allegations beyond a reasonable doubt. One 1961 Lincoln Continental Sedan v. United States, 360 F.2d 467 (8th Cir. 1966).

It has been generally held that testimony based on taste, sight and smell with respect to the content of liquor, is admissible in evidence and that the weight of such testimony is for the jury. See Atles v. United States, 50 F.2d 808 (3rd Cir. 1931), 78 A.L.R. 435 (1932) and the annotation following.

The standard required for entry of judgment n.o.v. is the same as is required for a directed verdict, and, unless it can be said that reasonable persons cannot disagree as to the facts or inferences drawn therefrom, the jury verdict must stand. Ahmann v. United Airlines, 313 F.2d 274 (8th Cir. 1963). A judge's disagreement with conclusions reached by a trier of facts is not a valid reason for setting aside the jury's conclusion. Badger Mut. Ins. Co. v. Morgan, 313 F.2d 783 (5th Cir. 1963). The jury —and not the court—is the ultimate fact-finding body, and, so long as divergent conclusions may be reasonably drawn from the evidence, a jury verdict may not be disturbed. Tyrill v. Alcoa Steamship Co., 185 F.Supp. 822 (S.D.N.Y. 1960). The question for the court is

---

2. "Q. You haven't tasted this, have you? A. No. I have not.
"Q. The only way you identify it is by its smell? A. By its smell.
"Q. Would you taste it? A. I wouldn't want to after it was dipped up out of that floorboard.
"The Court: The Court will tell counsel and the jury right now, the Court won't ask the witness to do what the Court's unwilling to do, but the Court has tasted and smelled that material; while this, of course, is not binding upon the jury, they

are at liberty to find it is not whiskey if they want to; the Court is convinced that it is whiskey."

3. In Plymouth Sedan v. Pennsylvania, supra, the Court used the following language:
"Finally as Mr. Justice Bradley aptly pointed out in *Boyd*, a forfeiture proceeding is quasi-criminal in character. Its object, like a criminal proceeding, is to penalize for the commission of an offense against the law."

not whether or not a verdict is against the weight of the evidence, since this is a question for the jury to decide. It is only where there is no evidence of substance upon which reasonable men could differ that the trial court is empowered to set the jury verdict aside. Nat. Equipment Rental, Ltd. v. Stanley, 177 F.Supp. 583 (E.D.N.Y.1959). A jury's verdict should never be preempted by the court unless it has no foundation in fact. United States v. Fenix and Scisson, Inc., 360 F.2d 260 (10th Cir. 1966); United States v. Hess, 341 F.2d 444 (10th Cir. 1965). A court should not direct a verdict, even where the evidence was uncontradicted, where conflicting, permissible inferences may be drawn. Readnour v. Commercial Standard Ins. Co., 253 F.2d 907 (10th Cir. 1958).

■ The trial court in the instant case recognized these familiar principles of law in its memorandum opinion, but reasoned that the jury simply did not want to return a verdict that would result in the forfeiture of a truck of substantial value when such a small amount of illegal liquor was involved even though the jurors may have believed the liquid to be untaxed and, therefore, illegal whiskey. The court, however, has no right to enter a verdict of its own, even though a prevailing party's position or story may well have seemed incredible. Hirsch v. Archer-Daniels-Midland Co., 288 F.2d 685 (2nd Cir. 1961).

■ The District Court had a perfect right to reach its own conclusion and to comment on the evidence, but it had no right to override the jury's verdict in regard to the contents of the bottle. As we have previously pointed out, the jurors had the same opportunity to examine the liquid as did the Government witnesses and the jurors did, in fact, examine it in the same fashion. The practical effect here is that twelve jurors found contrary to the testimony of the three Government witnesses, and

certainly a juror has not only a right but a duty to use his common sense and experience and draw all reasonable inferences from the physical facts. Seaboard Surety Co. v. First Nat. Bank of Montgomery, 263 F.2d 868, 871 (5th Cir. 1959). The Government witnesses did not qualify as experts and, as stated, no chemist's testimony was proffered although Government counsel, in oral argument, candidly admitted the liquid had been analyzed.[4] Even if the officers under the circumstances of this case might be considered experts, which they were not, the jurors would have had a right to reach the conclusion which they did, based on their own knowledge, experience and judgment. Cullers v. Commissioner of Internal Revenue, 237 F.2d 611, 616 (8th Cir. 1956).

■ There is certainly no inference that the jury's verdict here was motivated by improper consideration sufficient to justify the court to disregard it. We, therefore, reverse with instructions that the verdict be reinstated and that judgment be entered thereon in accordance with the jury's verdict.

---

4. Counsel for the Government explained that the chemical analysis was made in Dallas, Texas, and that the attendance of the chemist at the trial would have necessitated incurrence of substantial expense.